If counsel is ready, I'll call the case of Patel v. Smith. Good morning. Morning, Your Honor. Your Honor, this is Chris Anolowitz, and I represent the appellant in this case, Nilesh Patel. The District Court's summary judgment granting Appellee Smith qualified immunity conflicts with the United States Supreme Court in 11 circuit cases governing a pretrial detainee's constitutional claims. The District Court erred in improperly weighing evidence against Mr. Patel and ignoring evidence in his favor. On Patel's excessive force claim, the District Court found that Patel was asserting an Eighth Amendment conditions of confinement case rather than a Fourteenth Amendment claim and was thus barred from recovery. Patel, a pretrial detainee, expressly stated a Fourteenth Amendment claim in count one of his complaint. This Court and the Supreme Court have to be analyzed under the Fourteenth Amendment and the U.S. Supreme Court's Kingsley factors. This includes claims for confinement in unventilated and inadequately cooled spaces for an extended period of time. Here, Mr. Patel was put into a metal compartment in the back of a police van in very hot conditions for a total of two hours and seven minutes, including 52 minutes alone at the Lowndes County facility. Mr. Patel's claims are clearly established, and the facts support his case going to a jury. Mr. Patel's Fourteenth Amendment failure to provide medical care account focuses on whether Smith was deliberately indifferent to Patel's obvious medical needs. This Court need go no further than its recent Hanna decision, where the Court reiterated that it has, quote, made clear that an officer acts with deliberate indifference when the officer fails to provide medical treatment to a prisoner that has fallen unconscious. Here, Patel was found unconscious twice by Deputy Smith, and yet Smith offered no medical care to Patel while his condition worsened. The District Court erred in finding otherwise and erred in submitting this case to a jury. The District Court last erred in granting Smith qualified immunity under the state law claims, because Smith violated the express terms of the Lanier County Sheriff's Office policy that says that no DTME should be left alone in a vehicle. For those reasons, which I will discuss in more detail, the District Court should be reversed. Mr. O'Millowitz, this is Judge Newsom. Can I ask you a quick question about the first issue, the excessive force issue? I'm aware of this line of cases. I had an opinion not long ago in Piazza, which is relevant here. One thing I'm curious about, though, is how do we determine when an unventilated space claim is an excessive force claim and when it might be a conditions of confinement claim? Because if you were a detainee and you said, I've been in this cell that is unventilated and nasty and filled with rats, then we wouldn't call that an excessive force claim, would we? Wouldn't that be a conditions of confinement claim even though you were a detainee? How do you sort of separate the two universes? Sure. And I think you separate the two universes by looking back at the case law and what you analyze these things under. I mean, obviously, you've got a Fourth Amendment, Eighth Amendment, and Fourteenth Amendment type claims. And what you look at is the status of the person who is being the complainant in that case. Well, but even if you're, I mean, I get it that you've got arrestees, detainees, and inmates, Fourth, Fourteenth, Eighth, I got it. But if you're a detainee, so we're in Fourteenth Amendment land, surely detainees can be subject to excessive force, but they could also be subject to nasty and potentially unconstitutional conditions of confinement, right? And I would think if you were a detainee in pretrial detention, but in a cell, and that cell was nasty and unventilated and under the Fourteenth Amendment. Am I wrong about that? Would that be an excessive force claim? I mean, I think it could be stated under both. When you look back at the Bell versus Wolfish case that talks about analyzing these things in due process in the Fourteenth Amendment, it involved the conditions in which the inmates were being confined, I'm sorry, the detainees were being confined. And it analyzed it under the Fourteenth Amendment rubric. And count one of the complaint here, Mr. Patel said that he was excessive force because of the manner in which he was confined. And here, you've got somebody that's being placed in a hot van for a particular period of time. And that force that is exerted against him is the heat that is in the van. I mean, I think that, you know, it's certainly, I mean, I understand what you're saying. But I think that you could analyze it under either rubric. But when you look at a constitutional analysis, it ends up being the same. And what you look at is, you know, are you applying a force? And is that force necessary at all? And in a nasty rat-infested sale, is that force or is that condition necessary at all? And you look at it under the Kingley Standard and the Eighth Amendment standards, as you talked about in the Piazza case, because you're not going to have any punishment, because any punishment at that point in time is unconstitutional. And you look at whether or not it was necessary and are the conditions necessary in order to affect some legitimate purpose? And here, Patel had bonded out. He was in civilian clothes. There was no reason for him to have been in this van in the first place. And yet he goes through a two and a half hour or two hour and seven minute ordeal, passes out twice, and it has to go to the hospital because of it. And in terms of the analysis, you look at, I think, you know, is this objectively reasonable? And Kingsley says, no, it's not objectively reasonable. Is the constitutional violation clearly established? Yes, it's clearly established. It's clearly established by Bell versus Wolfish, by the Chandler case, by the Gruber case recently out of this court. And if you look at every single case that is cited, cited by us and by my opponents, it might come up under the context of the Fourth Amendment. It might come under the context of the Fourteenth Amendment. But what it says is that the law is clearly established. And when you look at conditions of confinement cases and analyze that under the Eighth Amendment, when you look at the Sixth Circuit's opinion that we cite in our brief, you know, if you're proving an Eighth Amendment claim and you're analyzing it under a Fourteenth or Fourth, well, you've already proved it because you don't have the subjective, you don't have the subjective claim. So I do think that that is, I do think that it's clearly established. I do think that you can analyze it under the excessive force analysis. And the most important thing is that you're analyzing it under the Fourteenth Amendment analysis. And that is what Patel argued in count one of his complaint. What do we do just out of curiosity? What do we do? I'm sorry, Judge Nason, did you have a follow-up? I'm sorry. Just one quick follow-up. So what do we do with the fact that nobody argues here about clearly established? And unless I just missed it in the brief, I didn't see that you sort of pushed through to argue that the law was clearly established. No, we did argue, and I think we point that out in both our reply brief and our initial brief, that the law is in fact clearly established. We made that point at summary judgment and the law is clearly established. And we cited what that clearly established law is, we did it at oral argument. And we pointed to the Groover case, we pointed to the Chandler case, we pointed to all of the other cases showing that these types of conditions are clearly established. And it is clearly established. I mean, this court has said multiple times, and again, Groover is an example of it. But again, go back to the 1979 Bell v. Wolfish case. I mean, you have got again and again and again where the courts have said that when you are put in severe conditions for an extended period of time, that is a constitutional violation. Now, you're going to have a continuum. Counsel, two-minute warning. I have another question. Yeah, let Judge Carnes go. My question is a little more practical. Whatever number we put on the amendment, how we characterize it, you keep saying it's clearly established. But you know, the Supreme Court has been clear, we don't deal with great generalities in deciding these things. We look to the particular facts to see, is what this officer did specifically, is this the kind of thing that was clear, that the law is clear, would have alerted him? So we're now, this is oddly our second hot car case of the day. And my question to you is, what is our dividing line here? You can imagine that there are times when, let's say, your client had been put in the car and maybe five or ten minutes, it was hot, it was uncomfortable. Here, it's much more severe and he's in the sally port and it was 50 minutes. But how do we come back and say, the law is clearly established that, under these particular facts, that the officer did not act objectively reasonable? In other words, it's not really a negligent standard, it's also a standard that puts an officer on alert. So can you give me the rule, because we live in the South, there are going to be times when people get in cars, as you know, and it's going to be hot and the air may not be working, and it may be five minutes, it may be 20, it may be 50. What line can we draw in this court to alert officers that if you exceed that line, then now you are in constitutional difficulty? Okay, I think there's, if I may answer, there are two issues. One is the law clearly established and two to the facts support the constitutional violation. Again, when you go back, where's the established? The clearly established comes from the Chandler case, from the Gruber case. I don't understand the same thing. Can you tell me what Chandler has to say about this? So then what Chandler says is that although a prisoner's or detainee's exposure to hot and comfortable temperatures is not per se unconstitutional, there is a point at which exposure to extreme heat without adequate cooling or ventilation can give rise to a constitutional claim when the health and safety risks associated to exposure to high temperatures. And the guidance that we're given is that you look at the severity and length of exposure. And here, the severity and length of exposure, when we look at cases, some cases that the other side cites says that 15 minutes is not enough, but if you get into the two-hour area, it is enough. How do we as judges know? How do jurors know? Because you're looking at it from the officer's point of view. When should he know that he's crossed the line, that the person's been in the car too long, it's now a constitutional violation? If you're us, if you're this court, tell me what principle you would articulate to separate out these different factual scenarios so we can know how to rule. Absolutely. So the first thing is, it's an objective standard. So I just want to make that clear. And then the objective standard, I think, is probably a reasonableness standard. And you look at the facts and circumstances of the case. You've got a constitutional violation here. You have a man who's been unconscious twice. That's not a rule. I want a declarative sentence. I want a rule. What is our principle going to be? I think that the principle would be that if you have excessively hot temperatures, which you have here, which is, I don't know that I can put the degree of the temperatures on it, but certainly 90 degrees is it. And that's in the case law that that seems to indicate it. If you look at something that is, I think that the cases that they cite, the most that they say is not unreasonable is 45, but I don't think you had an injury in that case. And so it's something that is more than that. And I think that we as reasonable people, we're not going to have, we're not, there's going to be a, you know, five minutes in a hot car is not going to be it. But when you are in 90 degree heat in Georgia in the middle of October, and you pass out twice, then for two and a half hours, I think we are all going to be shocked by that. And let me ask you this, if, you know, I know it's hard for you, it's hard to derive a principle. Is another way you would suggest we come at it to look at after the fact that if there are in fact injuries, we now know that there's a real problem. If it's the first case we've had here, we're really no physical injuries that, you know, after the fact, that's not maybe, it may be helpful to the officer, but after the fact there was no constitutional violation, but the existence of the kind of injuries you're talking about would then lend an inference that, that the conditions were unconstitutional. Do you think the minute the existence of injuries is something we should factor into our test? I think it certainly is a factor that can go in there, but I think even a priori, if you look at the fact that is that injury likely to occur is important. Because if you look at somebody being put in a 90 degree metal compartment unventilated for two hours and seven minutes, yes, an injury is likely going to occur. The fact that the injury then in fact does occur is proof that yes, that, that, that, that that was an unreasonable condition. But I think that even if you're looking at it beforehand, you can say that, that a reasonable person, and we often resort to reasonable person standards. We say a reasonable person and a reasonable jury would believe that this constitutional violation that under these facts, the constitution is violated. And that's how we look at most of our clearly established law. And then under these facts, could a reasonable jury come to this conclusion that an objectively reasonable officer violated the constitution. And I think that's the standard. And that's the standard that's been repeated in the cases. Well, one last question, as you can see, we, we don't have any published cases about hot cars. So we're about to embark on a different area where whatever we say can have a real impact going forward. And as judges, I don't know that I scientifically know. I'll tell you, just for me, seems like your client was in a car for a long time and somebody should have noticed that. But let's say, let's say that we don't know. We don't know 10 minutes is too long. Maybe a reasonable officer wouldn't know that 10 minutes is too long. Is this going to require us to have medical scientific testimony at trial as to so that we can know when it's something too long and when it's not too long? Is that the path you see us going down? And you did have medical testimony, correct? Or you had expert testimony? We did have expert testimony in this case. And I think that, you know, at some point in time, there is going to be a line where, you know, you say that, that our knowledge as lawyers and judges are not sufficient to answer the question, that it is going to have to go to the evidence that's in a case. I think that the cases that other side cites, which is the, you know, 17 minutes, 20 minutes, you know, basically the judges in those cases are saying, well, it's kind of walking around knowledge that you're probably not going to get injured in that period of time. But if it's more than that, you likely are. And then the facts are going to have to be there. Should the judges have weighed the, those cases the way that they did, you know, their district court opinions, they're not appellate opinions, maybe they shouldn't have. But the Sixth Circuit in the exact dividing line, I don't know. But I think there is at some point in time, you say, okay, 17 minutes, most people are going to say no. If it's 30 minutes or 45 minutes, maybe that's when we start needing medical testimony, but that's going to be a facts and circumstances test. All right. Thank you. And I think that my initial time is up and I've got, and I will reserve the any remainder of time I have. We will give you your five minutes of rebuttal, which I think is what you reserved. Yes. Thank you. May it please the court. This is Paul Throckold and I have the honor of representing Deputy Smith, who is properly granted summary judgment below. Judge Lawson, in this case, was his usual, succinct, pragmatic and precedent following self when he found that Deputy Smith is entitled to qualified immunity from suit with regard to the excessive force claim, because first and foremost, this is not an excessive force case. The court didn't say that this was a conditions of confinement case. It said it should have been pled as one. And counsel for the appellant specifically waived any confinement claim at the argument, said they weren't pleading it and they weren't arguing it. Secondly, the district court did not err in granting summary judgment to Deputy Smith on the deliberate indifference to serious medical needs case, because in this case, even if there was a serious medical need, which we argue there was not, plaintiff has not proven that Deputy Smith was deliberately indifferent to that need. And finally, the district court correctly found that Deputy Smith is entitled to state law qualified immunity, which used to be referred to as official immunity, because it's clear that he was undertaking a discretionary law enforcement function when this incident occurred. And he did so without actual malice, which is what Georgia law requires, the actual intent to cause the harm suffered. There's actually no evidence of actual malice in this case. With respect to the excessive force claim, first, Mr. Patel pursued the wrong avenue for his 1983 claim here. It should have been a conditions of confinement case. As Judge Lawson correctly pointed out, there's just no evidence of any precedent or Supreme Court precedent for a 14th Amendment excessive force case. I believe that was beginning on page 14 of his order. As this panel is well aware, even for an excessive force claim to be brought under the 14th Amendment, that's a higher standard than under the 4th Amendment. And because there is no dispute that Mr. Patel was a pretrial detainee, the 14th Amendment applies. So this is Judge Newsom. I think we're at about the two-minute mark. And since you're on the issue, I want to just pursue with you the same question that I was pursuing with your friend on the other side. So you seem very sure that this should have been a conditions of confinement claim because you say there was no application of force. Setting aside the amendment that this thing falls under, 4th, 14th, or 8th, depending upon the sort of the identity of the arrest, sort of like we had in the case before yours, like can't be an excessive force case because, I don't know, there's no, you know, sort of physical touching or something. I don't really understand that. I mean, I'm having a hard time distinguishing between what really is an excessive force case and what really is a conditions case. But I don't think it's as obvious as saying, well, sort of everybody can see that there was no force in issue here. What do you mean by that? Well, in those cases, I have read some district court and some unpublished opinions on an arrest case under the Fourth Amendment. They did analyze it, and I don't have the site in front of me, under a use of force analysis. But I have not found one at all in this circuit or the U.S. Supreme Court where, for a pretrial detainee to be subjected to conditions, whether it be hot or cold, why should the identity of the claimant really matter? Or for that, why should the number of the amendment matter if, in fact, the same thing is happening? You either shove an arrestee into an unventilated car and turn the A.C. off, or you shove a pretrial detainee into an unventilated car and turn the A.C. off. For the same time, the temperature is the same. Everything is the same. Why should one claimant have access to an excessive force claim under whatever amendment and the other claimant be sort of be shunted off to a conditions of confinement claim? I just don't understand that. Well, I think because that's how all the cases analyze these claims, Your Honor. I mean, I don't see any claim where a pretrial detainee, you know, here he's not being shoved into a van. He's not a suspect. He's not under arrest. It's just he's being transported back to sign bond paperwork. He's merely being coded from one county to the next to be able to be released. It's a completely different factual scenario than a Fourth Amendment arrest claim. Well, but do you take, and I promise I'll let this go, but do you take my point, maybe my phraseology was inarticulate, but all I mean to say is, so it's basically what you're saying that if you're an arrestee on facts and circumstances A, B, and C, you may have an excessive force claim, whereas if you're a detainee, if the same facts A, B, and C occur to you, you have no excessive force claim. You only have a conditions of confinement claim. Is that your position? Based on what I've read, yes, sir. Okay, that seems weird to me, but maybe you're right. Okay, um, for the excessive force are cases where some kind of force was applied. Someone was slammed into a jail cell, tased, pepper sprayed. I mean, there's just no application of force here. But even if it was a conditions of confinement case, even if that's what they had pled, the claim would still be deficient under the 14th Amendment and Deputy Smith would be entitled to qualified immunity. Well, even if there were conditions of confinement case, I'm not saying we've crossed the line into thinking the deputy acted sadistically, but aren't you getting awfully close to even having some problems if he were actually been convicted in jail under this particular conduct? Maybe certainly by the time they've taken this round the world tour of South Georgia, you know, when he at least comes back at the end of the Lowndes County visit and he's passed out, he continues to ride him around in a car that where I don't think the air was getting to the back. Don't you still have problems even under that analysis? I don't think so, Your Honor, because, you know, you have to understand what the deputy was doing. This wasn't just a joy ride. I mean, they're not just county hopping, you know, to get their kicks off. He had to take him, they had to go to Lowndes County to drop another detainee off, pick up a female detainee, and then go to Lanier County so that deputy, I mean, so that Mr. Patel could sign his transfer bond. And that's one issue I have with the appellant's argument. They argued that he didn't have to be in the van to begin with, but he did because the man who posted his bond was from Clinch County, not Lanier County. So when he put up that out-of-county transfer bond, they had to take Patel back to Lanier County to sign that bond. We don't have a lot of time, so let's assume that's not a big issue for us. Assume for your sake that you're not going to get very far in your conditions argument, and we're just back to excessive force and all the things we've been talking about the first argument and this argument. What is your best argument as to why, well, I guess, let me point you to something else. What about the clearly established fraud? You have not, interestingly, as a defendant, you've not discussed that much at all. Is your argument that if it was a constitutional violation, it was clearly established? What's your position on that? Well, I mean, as you pointed out in your conversation with Mr. Anulowicz, there aren't any published cases in this circuit that deal with these facts where you're transferring someone from one county to another because you don't have the sufficient space in your jail to hold them. You're taking him back to your county to sign a bond paperwork that he has to sign to be released. There aren't any cases that are even close. It was completely reasonable from the officer's perspective on the scene, Deputy Smith on the scene, which is how you have to view this, to leave him in that sally port. Rather than leave him outside in that van, he left him in a shaded, closed, secure sally port with other law enforcement agencies, cars coming in and out, that's shown in the video, to pick up the detainee he had to pick up and then leave. I mean, it's much more reasonable for them to do that than leave him parked in front of Lowndes County Jail in the sunlight. There just aren't any cases that get close to this. From the perspective of the reasonable officer on the scene, not with the benefit of any hindsight, what Deputy Smith did was objectively reasonable to carry out the duties that he had to carry out that day. What about during the whole 50 minutes coming out to see if he needed water or see if he's doing okay in the heat? You're saying that would not have been something we'd expect a reasonable officer to do? Not if he's in a shaded sally port. In October, I mean, I understand it was warm, but we don't know, and it's not in the record, what Deputy Smith, when he had to drop off one detainee and then pick up Ms. Grant, the female detainee he picked up, there is, in one of the depositions, I believe it's either Chief Singletary, who's the Chief Justice of Lanier County, or Deputy Smith. Lowndes County is notoriously just slow. That's because they house everybody's inmates from about a 40-mile radius around there, because nobody else has space in their jail to do it. So everybody, all these other county sheriff's officers are doing what Deputy Smith did. But if the van is in a shaded area with other officers in and out, you know, Patel deposed that he was banging on the window with another officer he didn't know from what jurisdiction, right next to him, who he says just ignored him. I mean, there are other people there. If someone is actually banging and trying to get help and screaming, I think it would be noticed and then, you know, a spot is needed. Let's assume you're right about, you know, Lowndes County, he didn't know, he thought your defendant didn't know, thought it's shady. He's in there an awfully long time, 50 minutes, but whatever, he thinks everything's okay because it's shady. When he does finally come out, I mean, the evidence taken in the light most favorable to the plaintiff is that Mr. Patel was passed out, not in good shape, wanted water. The deputy didn't get him water. And I understand we're getting now into deliberate indifference to medical needs. But as far as the excessive heat part, he still drives him now back to Lanier County or somewhere. And I gathered the evidence is the air still wasn't getting back to him. Don't you have a problem with this second leg of the trip in terms of now the officer's on notice, there's a problem, it's hot, and he's taking no steps to alleviate the heat, much less to address medical conditions? Well, I don't think so, Your Honor, because from the officer's point of view, you know, he gave Patel the sternum rub, he opened his eyes, he was sitting up and he wasn't, at this point, when he, when Deputy Smith walks out of the Lowndes County jail and finds Deputy Smith, quote unquote, passed out, he rubbed him, he woke up, he checked his vitals, Deputy Smith and Patel had a conversation. You know, the whole asking for water thing, Patel clearly says he doesn't know what the deputy's response was, but Ms. Grant, in her deposition, says, yeah, I heard the deputy said he would stop and get him water, and Patel says, no, just go on. So, you know, no, the deputy who does this for a living, transport people, doesn't see this as a serious medical issue, or think that he's using any kind of unreasonable, taking any kind of unreasonable action with transporting Patel. He checked his vitals, he said, hey, are you okay? As significant? I'm, pardon me? Having somebody passed out, he's been in a hot car, he doesn't see as significant? Well, no, ma'am, because he didn't, he didn't see it as a, as a medical, passed out. He was still sitting up in the backseat of the van, and he said, hey, man, he, you know, rubbed his sternum, and he looked at him, and they had a conversation. He checked his vitals, his pulse wasn't fast, he wasn't profusely sweating, according to Deputy Smith. He said his forehead was sweating, and his hair was a little wet, but yeah. Counsel, counsel, counsel, this is Judge Newsom. This is another problem I have with your brief. Repeatedly, you will say things like, according to Deputy Smith. You do reckon with the procedural posture here, right? Yes, sir. Your brief tells its own story. At this, at this juncture, aren't we obliged to accept Mr. Patel's story? Yes, you absolutely are, but Patel, there's no evidence that Patel's condition was any different than what Deputy, Deputy Smith observed, as far as how he found him in the van when he walked out of the Lowndes County jail, their, their conversation. But Patel, you know, the facts are, Patel doesn't really have any recollection of that conversation, and he, and he doesn't, he doesn't say that he, you know, that his condition was any different than what Deputy Smith saw at that point. Can I just follow up on that? This is Beverly Martin. In Judge Lawson's order on the failure to provide medical care issue, he says, he just stops his analysis by saying there was no objectively serious medical need. He said Mr. Patel has failed to bring forward any evidence to support his contention that that was a serious medical need. I don't think that's right. I think there's at least a dispute of fact based on Dr. Nesbitt's testimony, you know, about, you know, heat-related maladies and the fact that, you know, Mr. Patel was, was unconscious. I mean, you, you debate what he looked like at that point, but it's, it's, I mean, he presented expert testimony. I think there is, if there is, the weakest argument we have is whether or not there was a serious medical need, and I think what, if you read Dr. Nesbitt's deposition carefully, he, he, he says heat stroke is a, quote, serious medical condition. It's on page 10 of the depot, but that he did not suffer, Patel did not suffer a heat stroke. He, and then Dr. Nesbitt goes on to, to say, yes, he may have needed some medical attention, but he, he never opines that this was a serious medical need. Now, obviously, he, there's an expert that says there was some medical attention needed, and we disagree with that, but what Dr. Nesbitt... He said there was basically a heat-related illness, most likely a combination of heat syncope, I don't know what that, and some heat exhaustion. Right. Yes, and Dr. Nesbitt never says that's a serious medical condition, but what Dr. Nesbitt never does, nor does anyone ever do, is opine as to whether Deputy Smith inferred that that was a serious medical issue and then deliberately disregarded and continued on this course of conduct. Nobody, you know, and it's the Campbell versus Sykes decision that deals with expert testimony and whether or not the, the government official had the subjective intent to, to deliberately disregard the medical need, and that, that, that analysis is very much what we have here. There's no one, no one opines, there's no evidence in the record about Deputy Smith's deliberate indifference to any serious medical need, even assuming there was a serious medical need. Counsel, your time has expired. I have another question before you sit down. It has to do with, you know, the, the speaks of fact again. It looked like to me on the state law claim, you know, I've looked at this policy that says throughout that it applies, it refers to arrestees and detainees, and then, but, but Lieutenant Cuellar testified that it doesn't apply to detainees. So it looked like to me that Judge Lawson elevated the testimony of, of Lieutenant Cuellar over the plain language of the policy. I, I just wondered what your thoughts were about, about that, that I perceive as a problem with Judge Lawson's order. Well, the, the policy is, is captioned the subject, transporting arrested persons, and it deals with, you know, searching, searching those people you arrest for weapons, a situation you don't have here. It also, the policy also mentions arrestees several times. But it, it, I mean, it, it refers to both, arrestees and detainees, right? I mean, I, you know, I used to know somebody that would say, you're going to believe me or you're lying eyes. I mean, it's, I'm looking at it right now. It says arrestee and detainee. Right. And, and the only evidence in the record is from the county, the 30B6 deposition of the county, which was Lieutenant Cuellar said, this does not apply. We have never considered it as applying to detainees. Well, that's my, that's my point. I mean, doesn't his testimony contradict the plain language of the policy? I think when you read the policy as a whole, I mean, I understand it was inartfully drafted and they, and they are interchanging arrestee and detainee, but no, when you read the policy as a whole, the only evidence in the record is this doesn't apply to detainees. And there is, there is no evidence to contradict how the county applies the policy. How do you deal, just so I'm clear, this is Judge Newsom. How do you deal with the subsection of the policy that refers to transporting detainees for reasons after incarceration? How can that apply only to arrestees? Well, yeah, that, that language would indicate that, you know, if someone's already been incarcerated, this, this policy would apply to them. But, you know, even if you have a policy, there, there are a plethora of cases that say that doesn't, that doesn't make it ministerial. If, if you, if the officer has to exercise some kind of discretion in how to carry out the policy, it's, it's a discretionary function. And here, you know, the policy often talks about having two officers. Well, here, you know, the county's not staffed to have two officers doing what Deputy Smith is doing. He's by himself that day. He has to decide how he's going to transport these folks. And the most secure way to do it that day was to pull into the salary port like he did, swap out the detainees that he needed to swap out and keep going. So, just because there are some guidelines in a policy doesn't make it a ministerial function. All right. Thank you. Thank you. Mr. O'Mellow. Mr. O'Mellow. Thank you. Very briefly, on the, on the failure to render medical care, this court in Hannah said, our court has made clear that a prison official acts with deliberate indifference when the official is unconscious. This court has said that when you come across a prisoner or a detainee that is unconscious, and Smith came across Patel unconscious twice, that that is indicative of deliberate indifference to a serious medical issue. Under the objective portion of the, of that test, the objective portion says that you can have physicians saying that you need the care or that you are in such bad shape that a lay person could tell that you need immediate care. The evidence in the record shows, and the district court doesn't quote any of this, is that Brittany Grant said that when she got in that van, she was shocked to see a human being had been left like that, that Patel was passed out, had mucus coming out of his nose, was visibly shaking, was in severe distress, and she testified to that. Smith was an EMT. He was EMT trained. He knew when you saw a person in a condition like this, that that person needed medical care. And Lieutenant Cherry, who also was EMT trained and testified, said that an EMT trained person would know this. And when you look at the case law, the subjective elements say that if you look at the facts and a reasonable person can infer from the facts that there is a harm and there is a serious medical need, and you've been put on that, that Hannah says when you come across somebody that's unconscious, you better call a doctor, then that is something that violates that constitutional norm. And in this case, he didn't give any medical care, didn't get him water, didn't go right inside Lowndes County where the testimony is that a nurse was. The evidence is overwhelming. And the only evidence that they have to the contrary is Smith's self-serving statements. With regard to the state law immunity claim, yes, paragraph 4.11 of the Lowndes County Sheriff's Office policy explicitly says that a detainee may not be left unattended in a transport. And it does talk about both detainees and arrestees. And that's because those terms are understood under law to have different meanings. And a sheriff's office that is responsible for transporting and moving around detainees and arresting people, arrestees, is going to understand that clear law. And so their policy expressly says that if they want to change their policy, they can, but they have not changed their policy. And Smith violated the ministerial function of not following it. And that is in part what caused Patel's injuries. And then just very briefly, going back to the clearly established, when you look at the clearly established for the excessive force case, and we cite these cases in our brief, Gruber versus Broward, Saunders versus Sheriff of Brevard, everything goes back to Hope versus Pelzer, Bell versus Woolforth, Burchess versus Kieffer. Every single case that they cite all says that the law is clearly established. You then analyze the severity and the extreme conditions in which they are in, and the overlay that you analyze it is really who you are. Are you a prisoner, arrestee, or detainee? And then everything else follows. Thank you very much. And unless I have any more questions, I conclude my argument. Thank you, Mr. O'Neillowitz. I think that concludes our business for the morning. Court will reconvene tomorrow at noon, and that ends our court today. Thank you.